## M'Clurg & Trevor *against* Willard.

If the plaintiff, in an action of debt, require of the defendant notice of the special matter upon which he relies for his defence, and it be not given to him, a deposition establishing a special defence cannot be given in evidence, although there be an agreement in writing by the attorney, who had been retained by the plaintiff merely to attend the taking of the deposition, that it should be read in evidence. ·

It is erroneous to submit the existence of an agreement, as a matter of fact, to a jury, without any evidence to sustain it.

ERROR to the common pleas of *Tioga* county.

This action, by James Donley for the use of M'Clurg & Trevor against William Willard, was founded upon a note of the defendant to the plaintiff for 1527 dollars 46 cents, endorsed to M'Clurg & Trevor. The defendant offered in evidence the deposition of James Donley taken on notice. · The plaintiff objected to it, on the ground, that a demand was made of notice of the special matter upon which the defendant relied, and it was not given. The court overruled the objection on the ground, that there is an agreement written at the foot of the deposition, signed by the defendant and the attorney of the plaintiff employed to take it, that it should be read by either party on the trial of the cause. The plaintiff excepted to the opinion of the court.

The deposition which contains the material facts of the defence was read:

First. Do you know the parties in this suit, or either of them? Answer. Yes, I received a note from Wm Willard, Jun., the defendant in this cause. The amount of the note was for the sum of 1525 dollars, or 27 dollars and some cents, to the best of my knowledge; cannot recollect the date at present. I held the note for some time, and there were some payments made on it, which were endorsed on the back of said note, to the best of my recollection. The balance remaining was a little over 1200 dollars. I transferred the note as collateral security to the house of M'Clurg & Trevor, for a debt owing them by Thomas Borbidge & Co. At the time this note was given to M'Clurg & Trevor, there was additional collateral security given them by a transfer of a judgment of real estate in Union county. M'Clurg & Trevor proceeded to collect the judgment in Union county for their own benefit. M'Clurg & Trevor afterwards proceeded to collect the debt from Thomas · Borbidge & Co., of which firm I was one, for which the above recited collateral security was given. The manner they proceeded to collect their claim from Thomas Borbidge & Co. was as follows: I think in the year 1831, in the spring, I was at Port Deposit with coal. One young man was shipping our coal as usual to the south. I went to the south to

[M'Clurg & Trevor v. Willard.]

attend to the sale of our coal. When I went to Baltimore I was informed by our agent, George Hayne of Baltimore, there was an attachment on our coal. It appeared to me strange, as I thought our business was so arranged there would be no annoyance; that we might do the best we could with our property for the use of our creditors, which was my intention. When I became fully acquainted with the nature of the business, in order to secure the pilots and labourers, when I discovered the property advertised for sale by the authority of M'Clurg & Trevor, I went immediately to Port Deposit and stopped our young man from shipping any more coal. I returned next morning to Baltimore in the steamboat. When I was gone I was informed by Mr Hayne there was a writ out for me. He advised me not to go on shore or I would be taken prisoner. I told him I was not afraid of the law. I went on shore. The sheriff's deputy arrested me at the suit of M'Clurg & Trevor for the same debt for which collateral security was given. I gave security for my appearance at the Baltimore court, and the property was released from the attachment. I was surrendered to the jail of the county of Baltimore some time in May 1831, on a judgment obtained by M'Clurg & Trevor for the aforesaid claim. I was detained in prison until about Christmas. I recollect seeing Charles Elliot when in prison. He came to visit me, I think, in June. Mr Elliot mentioned nothing to me about any debt I owed him. I felt myself under an obligation to Mr Elliot, and proposed giving him a transfer of a note in the hands of M'Clurg & Trevor against William Willard, Jun.; and proposed to revoke the former transfer. I revoked the assignment made to M'Clurg & Trevor, by advice of my counsel, and transferred the same to Charles Elliot. The counsel of M'Clurg & Trevor called on me repeatedly; and proposed to release me if I would place them in the same situation they were in at the time of the first assignment of William Willard's note made to them, and previous to revoking the first assignment, and making an assignment to Charles Elliot. I replied to Mr Collins, M'Clurg & Trevor's counsel, that what was written was written. I could do nothing more, believing it was just as it now stood; for that I was indebted to Charles Elliot a much larger sum than he would be likely to receive, for moneys borrowed.

Question by Ashbel Green, counsel for the plaintiffs. Did M'Clurg & Trevor release you from all claim? Answer. Yes, by a written release, bearing date the 22d of January 1835.

Release exhibited, and the competency of the witness admitted by the parties.

What was the amount of the debt you owed M'Clurg & Trevor? Answer. About 1700 or 1800 dollars. I think I assumed the amount of the debt by giving my own note.

Were the drafts protested? Answer. I think not.

Was there a receipt given by M'Clurg & Trevor for the note of Mr Willard as collateral security? Answer. Yes, I think there

[M'Clurg & Trevor v. Willard.]

was. I cannot find the receipt. I think it is in the hands of John Glen, Esq. of Baltimore. I think the substance of the receipt was, if Mr Willard's note, and the judgment on property in Union county, were collected, they should pass to the credit of Thomas Borbidge & Co., of which I was one.

Had M'Clurg & Trevor any other security than Mr Willard's note and the judgment in Union county? Answer. Yes, in my person and property.

At the time the security was given to M'Clurg & Trevor what was the understanding? Answer. I do not think there was any bar against their proceeding otherwise against me; but they promised, on receiving the collateral security, they would not annoy us in our business. I think they held my notes at the time the collateral security was given; and I think they still hold them.

What was the amount inserted in the writ of attachment in Baltimore? Answer. I think about 1700 or 1800 dollars.

Were you indebted to M'Clurg & Trevor more than the amount of the property attached? Answer. I do not know.

Did you accept drafts drawn in favour of M'Clurg & Trevor by Thomas Borbidge & Co.? Answer. I do not recollect. The presumption is I did.

Did part of this debt due M'Clurg & Trevor grow out of these drafts? Answer. I do not recollect. The presumption is it did.

Did Mr Collins, as M'Clurg & Trevor's attorney, speak of the validity of an assignment to Charles Elliot? Answer. No, nothing further than the proposition before mentioned.

Were you indebted to M'Clurg & Trevor in a book account? Answer. Yes; and I think my own notes were given in payment thereof for the whole debt; but there might have been drafts. There were two notes which embraced the whole debt.

Did you consider the assignment of Mr Willard's note made to M'Clurg & Trevor invalid in consequence of their imprisoning your body? Answer. Yes, I considered it invalid. I was so advised by my counsel.

Did you consider that you were paying M'Clurg & Trevor in full by your imprisonment? Answer. I think I was in equity. I do not know how it is in law. (Objected to; and objection noted by the magistrate.)

Were the two notes given to M'Clurg & Trevor protested? Answer. I do not recollect.

Signed. JAMES DONLEY.

The counsel for the defendant respectfully request the court to charge the jury:

That if they believe the note on which this suit is founded was given by Donley to M'Clurg & Trevor to secure their claim against him, on condition that they would not annoy him in his business, or prosecute him on their drafts from Borbidge & Co., or on any other

claim; and, that in violation of said agreement, M'Clurg & Trevor did sue him and attach his property, and arrest his body, Donley had a right to assign the note to Elliot, as the property in the note would then be by law vested in him.

The court answered this point in the affirmative.

The admission of the deposition, and the answer to the defendant's point, were assigned for errors.

*Hepburn* and *White*, for plaintiff in error.
*Parson* and *Williston*, for defendant in error.

The opinion of the Court was delivered by

GIBSON, C. J.—Independent of the objections to certain parts of the deposition for hearsay, and the witness's impression of his own liability, which seems to be founded, the whole of it was inadmissible for want of notice of special matters, notwithstanding the agreement of the counsel employed to conduct the examination before the justice. Knowledge is certainly not notice; for though the suitor may know that his adversary is taking precautionary proofs of particular facts, he has no warrant to anticipate that he will be called on to rebut them; without which he ought not be burthened with preparation for it. It will perhaps be found the safest course in the end to go by the plain directions of the rule, instead of attempting to satisfy its exigencies with equivalents. How far then was the client bound by the agreement of the examining counsel? unquestionably but in respect to matters within the scope of his authority. Had he been retained generally, his power to bind would have extended to every transaction in the cause; but being restricted to a specific service, he was competent to waive objections to nothing that was not incidental to the execution of the rules. He might dispense with exceptions to notice, time and place, leading questions, and perhaps some other subordinate matters; but not with exceptions to the competency of the witness, the pertinency of his testimony, or its admissibility under the pleadings or specification of defence. The deposition ought therefore to have been overruled.

The charge was decisively erroneous for submitting to the jury, without a spark of evidence to sustain it, the existence of an agreement to forbear the debtor on the original security. To a question put in respect to the understanding of the parties, the witness answered: " I do not think there was *any bar* against their proceeding otherwise against me, but they *promised* on receiving the collateral security, they would not annoy us in our business:" yet notwithstanding this explicit negative, the promise thus explained was left to the jury as an agreement which would undoubtedly be a bar, were it any thing at all. It is, however, precisely that indication of indulgence which is always given when the impatience of the creditor is pacified by an increase of security, yet even without a thought of creating a legal obligation to forbear; for nothing is more indisputa-

ble than the creditor's immediate right to press all his securities where there is not a specific agreement to the contrary. But we are told the purport of the alleged agreement was, that the creditor should proceed on the collateral security in the first place, and return it, if unproductive, before recourse had to the original debtor. Is there a word like that in the testimony? The witness expressly says, that the note was a collateral security; but it would have been a substitute for the original, if it were to have been an exclusive source of satisfaction in the first instance. There was, therefore, no such condition as authorised the payee, to cancel his endorsement, and transfer the debt a second time, without which the alleged payment to the second transferee would not be satisfaction of it. Granting even that there was a promise to forbear, yet it would be applicable but to the original security, and would afford a defence to nothing else. It certainly would be inapplicable to the acceptance of a bill of exchange subsequent to the transaction; as the cause of the attachment and arrest in Baltimore was; and though the bill was drawn for the same debt, it shows that a new arrangement was made and a new responsibility contracted; for it certainly could not have been meant that the bill should not be negociated or the acceptor liable to immediate pursuit, if it were dishonoured. Even then conceding the existence of a promise to forbear in point of fact, the case was conclusively with the plaintiffs in point of law.

Judgment reversed, and *a venire facias de novo* awarded.